Good morning, your honors. May it please the court, Michael Powell on behalf of the appellant Maria Contreras-salas. I see that we're sort of following the last argument, at least on the third aspect of theirs, whether or not a particular abuse and neglect statute qualifies for the 16-level enhancement under either the aggravated felony statute 1101A43F or under 2L1.2. In this particular case, I don't think – I guess the starting point here is that the statute is clearly overbroad. And because it has a negligence aspect to it, you don't have to actually do any physical activity whatsoever. You need only to permit it or fail to report it or fail to take the child to medical care. So to – in order to be convicted under this particular statute, and it's set out in full with all the other definitions on page 13 of the opening brief, is just allow it to happen and then you're guilty here. And I think the government agrees with you on that point. That is to say, the way you just – the dispute between you is whether or not this qualifies under the modified categorical. Right. Okay. And just one point. Under the guideline itself, the statutes – or they confine crimes of violence to the 16A portion. There has to be an element. So – to even qualify for this. And so where we're at now is at the modified categorical approach, and this was a jury trial. So under Corona-Sanchez, the Embankment Court says that, of course – and I think Judge Fischer said this earlier We don't look at the facts. We look at what – the necessary elements the jury had to find to convict this particular person. And really, the only way we can do that is to look at the jury instructions, which were not produced for the judge – for Judge Hagan to make this decision. He didn't have them before. Although you can also look at the charging document. Yes, you can, Your Honor. But I don't think – and Corona-Sanchez says that also, that that is not sufficient in and of itself. Just the general charge of a violation of the statute? Yes, Your Honor. I mean, the charging document had some facts in it, but it had both aspects. It had the negligence aspect as well as the physical aspect, and that was because There's no way to know which way the jury flipped on it anyway. No. No, Your Honor, there's not. There were two defendants charged in this case. Only one was tried. Let me ask you this. If you're correct, and we agree with you, and that's saying we will, but if that happens, where does this leave your client right now under the sentencing guidelines? In line to Blakely, Your Honor? Is that what you're asking? Well, it makes – what at least – Wait a minute. Now, she's been in prison how long, and how long would she be there if this element were not in the sentence? There's a 56-month difference between the sentences. She – her guideline range would be 24 to 30, and in this case it was 77 to, I believe So she served her time. Not yet. Oh, no, Your Honor. I believe that she is not scheduled to be released from the Bureau of Prisons until 2007. If I'm – if I'm right. Yeah, but that's under the – that's under the sentence that's imposed. Right. If the sentence is corrected, would she be released? Well, it's kind of difficult to tell because when she was sentenced, she was still in state custody. But – Yeah, but she's got concurrent time. Yes. She will be very close, actually, and then at serving her – fulfilling her time. Yes, Your Honor. If you can, what do I do about it, if anything? Well, I mean, what we do here – what we have to – Do I leave it up to you to go back to the district court and fight about it? Yes, sir. Okay. I think that's what – that's the only – I think that's the only thing we can do because – Well, the government takes an appeal to the Supreme Court and it's another three years before you get any further notice that she's out of jail. Well, Judge, if it takes that long, she'll be gone before we get that resolved. But I think we don't have much of an option here in that respect as to – I mean – I mean, I think we ought to – we could resolve it here, but the circuit said otherwise in terms of the government getting a second chance to prove or at least bring the documents and try to show the district court that this was a – If she was entitled to discharge and it takes us six months to get together and write an opinion, you'd rather have her out than in, wouldn't you? Yes, sir. Any way we can help you with that, if that's the case? Well, I've had the court actually grant people bail pending their decision before. I've never granted bail at this level. I've remanded to the district court to fix terms and conditions of bail. No, I actually – On a limited remand. Just last year, Your Honor, I had a case where the panel granted bail right after the argument. Yes, sir. And in that particular case, what would happen would – then INS would pick her up and deport her. Okay. Okay. It seems like the Court's pretty much on track here with – Why don't we hear from the government? It may turn out you have something that you'd like to respond to. Yes, sir. Depending on what's said. May it please the Court. My name is Robert Don Gifford and I'm with the U.S. Attorney's Office for the District of Nevada. And just briefly, there was – Mr. Powell did briefly mention the Blakely case. This Court came out with a decision two days ago, U.S. v. Quintana. Quintana, Court Number 03-50245, is an amended decision which reiterated that the 16-level enhancement was not affected by Blakely in a 1326 case such as we have here. But that doesn't – No, sir, because there's been a judgment of a court that there was a sentence. The question is not whether the sentence was imposed and can be approved. The question is, what's the import of the sentence in light of the statute under which the conviction was obtained? And that's not a Blakely problem. You couldn't submit that question to a jury now. No, I – The jury's had a whack at it. And the question is, did they – what elements of that crime, state crime, did they rely on? And how do you translate that into a federal felony involving personal injury? I agree, Your Honor. But I did want to say – I wanted to point out that Quintana was out there as far as analysis under Blakely. It doesn't help you if you lose. No, Your Honor. And I still – I don't think with Quintana, I think it still reiterates the fact that because it was a crime of violence, it's still applicable to a 16-level. One thing I would point out to the courts, in my brief, I did do the modified categorical approach for the court's analysis. But the government is not conceding that the statute itself is overbroad. And the reason why is this. I mistook your brief. I thought you had. Okay. I did include that full analysis in there. But what I do want to point out is that the court's prior decision, and as Mr. Powell pointed out in his brief, in Trinidad Aquino – or Aquino, forgive me if I mispronounced that – is that that was a negligent homicide arising out of a DUI. And that was where the court said where there is negligence, it does not necessarily equivocate to a crime of violence. In this case, the statute deals with neglect. The statute itself, the Nevada revised statute, is defined as abuse or neglect. Was it an abuse? Or which was it, a neglect? So there was no physical injury imposed by neglect? No, Your Honor. It was charged and pled to according to the charging document. And what she pled to, and it's in Appendix 2 and 3 for the judgment of conviction, that there was substantial bodily harm. It was charged with substantial bodily harm, but they do use the words abuse and or neglect, which resulted in substantial bodily harm in both the charging document and the judgment of conviction. If you parse the information favorable to her, she was charged with and pled to causing or permitting, in this case permitting, a child of 14 months to suffer unjustifiable physical pain or neglect. So it would be to suffer physical, because I think the bodily injury is in here, but neglect resulting in bodily harm. She did plead to the bodily harm. But it's through neglect and that the neglect was that she did not seek medical assistance. Okay. So if we parse this and what she pled to, what it comes down to is that there was bodily injury caused by neglect, a failure to seek medical assistance. And that's not a crime of violence under Taylor. Well, Your Honor, if I can go back down to the statute. What she pled to was child abuse and or neglect causing substantial bodily harm. But the statute itself defines what abuse and neglect is, and it says of a non-accidental nature. And that's a lot different than what happened with the negligent hogs. Yes, sir. It need not be physical violence. It may mean or mental. Correct. But that's not what she pled to, though. And that's the ---- But when you use abuse or neglect, that's the meaning of it. It means physical or mental injury. Correct, Your Honor. Now, the jury didn't distinguish between the two, did it? Well, Your Honor, the ---- I cannot concede and I have no knowledge whether or not there was a jury trial on this, because that is not in the record at all. The only place that was stated that was ---- Other than mental abuse. Yes, Your Honor. The judgment of conviction, what she was found guilty of, is only causing substantial bodily harm, not mental. So while mental is included in the statute, what she was charged with and what she pled to specifically was bodily harm. It's the same plea, but you don't know whether ---- All we have is a judgment. We don't know whether she ---- I thought this had a jury. This is a plea? Well, Your Honor, the ---- Yeah, I mean, there is no ---- I have no information. The only information that said that it was a jury trial came in the form of a motion by the ---- or excuse me, in a sentencing memorandum by the defendant. There's nothing in ---- There's no documents. There's no indication that this was a state conviction from a jury trial. Okay. Only that she was charged in what she pled to. Okay. And there's no ---- And what she pled to specifically excluded mental abuse. It focused only on substantial bodily harm. And the definition of ---- Let me slow you down a minute. I'm looking at the judgment. And the judgment says that she was guilty of the crime of child abuse and or neglect, causing substantial bodily harm. So it's not mental by virtue of that in any event. And you're saying that neglect by definition requires and has to be non-accidental? Yes, Your Honor. The Nevada State statute at subsection A says defines abuse or neglect means physical or mental injury of a non-accidental nature. That means that ---- As President Johnson used to say, let's reason together. Let's look at section 3A of the statute. Do you have it right there in front of you? Yes, Your Honor. And it's the provision you're referring to. Abuse or neglect, in quotes, means physical or mental injury of a non-accidental nature, comma, sexual abuse, comma, sexual exploitation, comma, negligent treatment or maltreatment of a child under the age of 18 years. There's an or in there. That is to say, as I read that sentence, abuse or neglect can be, as one of the enumerated examples, negligent treatment. It also can be non-accidental, physical or mental injury of a non-accidental nature. That's how I read the statute. Well, but I, Your Honor, I also don't see anything that says that it's of accidental nature. It says negligent treatment is one of the examples. You've got several examples. One is physical or mental injury of a non-accidental nature. Another is sexual abuse. Another one is sexual exploitation. Another one is negligent treatment. And the last one is maltreatment. Okay. So negligent treatment strikes me as one of the examples of what can constitute abuse or neglect. Therefore, if the court takes ‑‑ if the court sets the standard or stops it there, then looking at the judicially noticeable documents and the modified approach, all that we have and all that we know is that she pled to child abuse and or neglect causing substantially bodily harm. Sure. And the result was substantially bodily harm. And the definition under crime of violence ‑‑ Wait, wait, wait. I think you're skipping ahead here. You're trying to import into neglect a mens rea, an intent, right, because it says it's non-accidental. Correct, Your Honor. For that, you rely on the first clause. It's a physical injury of a non-accidental nature. But it can also be physical injury of a ‑‑ due to negligent treatment, as Judge Fletcher. So if it's negligent treatment, that doesn't have anything about non-accidental. Are you saying non-accidental modifies everything that follows, that non-accidental nature means non-accidental sexual abuse, non-accidental negligent treatment? Your Honor, I hadn't read the statute, too, where there was a separation, that non-accidental. It was one category. It was one category. I've argued with negligent. I mean, I think we have to agree that she's been ‑‑ the judgment says neglect. The definition covers both abuse and neglect at three. Right, Your Honor. So neglect, are you saying neglect falls under non-accidental nature or under negligent treatment? Well, Your Honor, I think that the definition of neglect is what it means is physical or mental injury of non-accidental nature. But what does negligent treatment then mean? Your Honor, the only thing is that ‑‑ Also, neglect includes ‑‑ let me ask you this. Will you concede that under this statute, plain language, neglect includes negligent treatment? Yes, Your Honor. Okay. So if what the judgment could include would be negligent treatment as opposed to a neglect of a non-accidental nature, then she would be outside the scope of the statute. Outside the scope of the enhancement. Yes, Your Honor. Okay. And I'm out of time, but if I can just wrap up just briefly in 30 seconds. Title 18 U.S.C. 16B, not A, but B, requires and involves a substantial risk that physical force against the personal property of another may be used in the offense. In this case, neglect of a child is not the same as a negligent homicide in the DUI from the Aquino case. In this case, there is an affirmative act that did happen here. There was a purposeful neglect of a child that resulted in substantial bodily injury, and this physical force resulted. That wasn't charged. They say purposeful was not charged. That's not an inescapable consequence of what's charged. But, Your Honor, neglect of a child is not the same as negligence in a DUI accident. This is not an accident. Yeah, but look, here's what the ñ I mean, this is what they charge, neglect by not seeking medical assistance. That's boiled down to what she could have been or pled to and been within the Arizona statute. Correct, Your Honor. But the thing is, is that in a reverse, is that that's not what she pled to. What she did plead to was ñ How do we know? All we have is the judgment, and the judgment simply says neglect. And, Your Honor, that's why there is no objection below as to what happened below. So, and there's been no proffer. There's been nothing put forward by the defense on that aspect. But it's your burden on the sentencing. Correct, Your Honor. And if there's an absence of an objection, I mean, if there's absence of proof by you of the contents of the Arizona transaction or criminal proceeding, it was your burden to present it. And it's your ñ it's by reason of your not presenting it that we have the problem. What the evidence was presented was an unobjected to pre-sentence report. Under our ñ but you can't use that under our case law. I think Romero-Rendon goes into ñ discusses a little bit about an unobjected to pre-sentence report in which ñ I'm sorry. It was objected to. And when the district judge here imposed the sentence using the enhancement, the lawyer representing this defendant specifically said you cannot rely on the pre-sentence report. She did not object to the fact ñ she objected to the enhancement. She did not object to any description as to what happened. She objected to reliance on the PSR. And we ñ our law says you can't rely on the PSR. The judge below did not rely on the PSR. She ñ he pointed out to her that he was relying on case law, not the PSR. Why are you citing the PSR then? Well, I'm ñ To carry your burden of proof. Because there are certain things that the government can present is that it can present the ñ with a judgment of conviction and indictment that shows substantially bodily injury as defined at 18 U.S.C. 16B. Also, any reference to 1101A43, which dealt with aggravated felony, is no longer applicable. It does not apply to crime of violence anymore for the purposes of determining that 16 level. That Pimentel-Flores has said you don't go to 1101A43. Thank you very much. Thank you very much. Any rebuttal? You have a lot of time, but you need not use it all. Well, no, I don't think so, Your Honor. We have a lot ñ you have a long calendar. Okay. Just one point that ñ coming off what Mr. Giffords said. He says, well, under Pimentel-Flores, we don't go to the statute which defines a crime of violence as 18 U.S.C. 16A and B. The guideline now ñ and I urge the Court to look at application note 1A sub 3 under 2L1.2. It's limited to the 16A definition. It has to have an element of force or violence. The B now is out, and the argument that Mr. Giffords just made is out, too, because under the guideline, the B version of a crime of violence would not qualify for the 1611. And that's where we are. Okay. And if there's not another specific question. Thank both of you very much. The case United States v. Contreras-Salas is now submitted for decision. The next case on the argument calendar is United States v. Hummingway.
judges: Beezer, W. Fletcher, Fisher